IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,,<br><br>               Plaintiff,<br>v.<br><br>SERGIO VALDEZ-PENALOZA,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS**<br><br>Case No. 1:11-cr-00096 DN<br><br>District Judge David Nuffer |

Defendant Sergio Valdez-Penaloza moved to suppress[1] evidence seized from an allegedly unlawful search of a vehicle. A hearing was held September 9, 2013,[2] and the parties filed memoranda thereafter. This order denies the motion.

## FACTS

On July 6, 2011, the Weber/Morgan Strike Force used a confidential informant to broker a narcotics transaction with the co-defendant in this case, Mr. Eric Silva.[3] The confidential informant told officers that he and Silva arranged a three pound methamphetamine deal.[4] The transaction was to take place at the Rancherito restaurant in Roy, Utah the following day, July 7th.[5]

That next day, agents fitted the informant with an electronic monitoring device.[6] All eight agents could hear what was occurring.[7] Mr. Silva drove up to the restaurant in a white Grand

---

[1] Motion to Suppress, docket no. 118, filed September 3, 2013.

[2] Minute Entry, docket no. 121, filed September 9 2013; Transcript of Hearing (Transcript), docket no. 125, filed October 7 2013.

[3] Transcript 5:1-6:21.

[4] Transcript 5:11-18.

[5] Transcript 6:13-14.

[6] Transcript 6:17-21.

Cherokee.[8] Mr. Penaloza arrived at the restaurant in a black Silverado truck.[9] Mr. Penaloza, Mr. Silva and the confidential informant went into the Rancherito restaurant.[10] Agents later saw the confidential informant and Mr. Penaloza leave the restaurant.[11] The agents saw the confidential informant and Mr. Penaloza "looking in the back seat"[12] of the Silverado. The confidential informant then went to his truck and told Agent Francom that Mr. Silva and Mr. Penaloza were going to follow him to a storage unit location.[13]

Mr. Penaloza and Mr. Silva then drove in Mr. Penaloza's black Silverado, following the confidential informant in his truck, to the storage unit.[14] Mr. Penaloza and Mr. Silva got to the storage facility and backed the Silverado into the storage unit and got out.[15] The confidential informant went into the storage unit. Then the confidential informant went back to his truck, contacted Agent Francom by phone, said he had seen the narcotics and said "come and get them."[16] As soon as this happened, agents came to the storage unit and arrested Mr. Silva and Mr. Penaloza.[17]

---

[7] Transcript 6:22-25.

[8] Transcript 7:10-16.

[9] Transcript 17-22.

[10] Transcript 8:8-15.

[11] Transcript 8:14-17.

[12] Transcript 8:17-19.

[13] Transcript 8:21-23.

[14] Transcript 9:9-10:14.

[15] Transcript 10:12-11:5.

[16] Transcript 11:6-11.

[17] Transcript 11:19-21.

A K9 drug dog was immediately deployed into the interior of Mr. Penaloza's Silverado.[18] The dog "indicated" on a glass jar that was wrapped in duct tape and located on the back seat of the Silverado.[19] That jar was found to have the drugs[20] which Defendant seeks to suppress.

## DISCUSSION

Defendant raises several issues, none of which require suppression of the evidence.

He contends that a warrant was required to enter into the storage unit to search the vehicle. But after admitting he has no standing to raise that issue[21] he transmutes his argument to contend that the automobile exception to the warrant requirement does not apply, because this "vehicle was de facto immobilized at the time of the unlawful search and there was no risk that the vehicle would disappear before law enforcement could obtain a search warrant."[22] The evidence does not show the vehicle was immobile – it had just been driven to that location and had no clear right to remain there. "Police may search a vehicle incident to a recent occupant's arrest . . . if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."[23] The informant's statements and the observations of the truck movements made it reasonable to believe it contained evidence.

Defendant also claims the officers had no probable cause to arrest him, and search his vehicle incident to arrest, relying principally on the assertion that the drugs were not seen—only

---

[18] Transcript 11:22-12:2.

[19] Transcript 11:22-12:9.

[20] Transcript 13:18-24.

[21] Memorandum in Support of Motion to Suppress at 8, docket no. 124, filed September 27, 2013.

[22] *Id.*

[23] *Arizona v. Gant,* 556 U.S. 332, 351 (2009).

a jar containing the drugs[24] and that he was not suspected before that day of being involved in drug deals.[25] The fact that the drugs were in a container does not eliminate the other evidence that the transaction was a drug transaction, such as the calls beforehand to arrange the deal. And when the informant said he had seen the drugs it confirmed that the prior arrangement was being fulfilled. The officers were not required to have evidence independent of what they saw and heard to establish that there was probable cause of his involvement in a drug deal.

Defendant finally claims the officers lacked probable cause for the search of the automobile, independent of the search incident to arrest. But the statement by the informant that he had seen the drugs clearly provided probable cause to search the vehicle. This vehicle had apparently been involved in transportation of drugs and in a drug transaction.

**ORDER**

IT IS HEREBY ORDERED that the motion to suppress[26] is DENIED.

Signed January 30, 2014.

BY THE COURT

District Judge David Nuffer

---

[24] Transcript 15:16-23.

[25] Reply Memorandum in Support of Motion to Suppress at 2, docket no. 127, filed October 17, 2013.

[26] Motion to Suppress, docket no. 118, filed September 3, 2013.